IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

LEON D. FORD,

       *Plaintiff*

    *v.*                           Docket No.:

CITY OF PITTSBURGH, CITY OF
PITTSBURGH BUREAU OF POLICE, REGINA      JURY TRIAL DEMANDED
MCDONALD, NATE HARPER,
POLICE OFFICER DAVID DERBISH,
POLICE OFFICE MICHAEL KOSKO, and
POLICE OFFICER ANDREW MILLER.

       *Defendants.*

## COMPLAINT

Plaintiff Leon D. Ford makes the following representations to this Court against the named Defendants as follows:

### PARTIES

1.    Plaintiff Leon D. Ford  is an adult individual who, at all times relevant hereto, resided 1002 Wible Run Road, Pittsburgh County of Allegheny, Pennsylvania 15209.

2.    Defendant, City of Pittsburgh, (hereinafter referred to as "City") is a municipal corporation within the Commonwealth of Pennsylvania, with administrative offices located at 414 Grant Street, 5th Floor, Room 512, Allegheny County, Pennsylvania, 15219.

3.    Defendant City of Pittsburgh Bureau of Police is part of the Department of Public

Safety and charged with the supervision, training and discipline of the police for the City of Pittsburgh having its principal office located at 1203 Western Avenue Pittsburgh Pennsylvania 15233.  Its police officers exercise their police powers within the jurisdictional limits of the City of Pittsburgh. The Police Officers of such force are deployed with various weapons including a firearm for use in the execution of their duties.

4.    Defendant, Regina McDonald, is an individual who currently holds the position as acting Chief of the City of Pittsburgh Bureau of Police. During the time in question, when she was acting as Chief of Police and prior to the time she took the position, she was involved in the formulation of policy, procedures, and guidelines for the officers of the City of Pittsburgh Police Department, including but not limited to: traffic stops, use of force, and the use of deadly force.

5.    Defendant, Nate Harper, is an individual who was the Chief of Police at the time of the incident. He has subsequently resigned due to unrelated matters. In such capacity as Chief of Police, he was charged with the supervision, direction, and control of the Officers of the City of Pittsburg traffic stops, use of force, and the use of deadly force.
He was also in charge of precluding the use of racial profiling to effectuate arrests and traffic stops.

6.    Defendant David Derbish, at all times relevant hereto, is an individual who is employed as a police officer by the City of Pittsburgh. This action is brought against the named individual in his individual and in his official capacity as a police officer of the City of Pittsburgh.

7.    Defendant Michael Kosko, at all times material hereto, is an individual who is employed as a police officer by the City of Pittsburgh. This action is brought against the named individual in his individual and in his official capacity as a police officer of the City of

Pittsburgh.

8.      Defendant Andrew Miller, at all times material hereto, is an individual who is employed as a police officer by the City of Pittsburgh. This action is brought against the named individual in his individual and in his official capacity as a police officer of the City of Pittsburgh.

JURISDICTION

9.      This cause of action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this court under the provisions of Title 28 of the United States Code, Sections 1331, 1334 and 1367 (a).   Allegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures applicable to the States and individual acting in their official and individual capacity by the Fourteenth Amendment of the United States Constitution.

10.      It is also submitted that the pendant jurisdiction of this Court is invoked over all state court claims in view of the common nucleus of operative facts as to all claims.

FACTS COMMON TO ALL COUNTS

11.      The City of Pittsburgh is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania. In turn, the City of Pittsburgh is responsible for the development, operation, and supervision of the policing powers.

12.      The City of Pittsburgh Bureau of Police is responsible for setting policy, procedures and directives for the operation of its Police Officers and to ensure that policies, procedures and directives established are enforced for the exercise of their police duties; and, are

responsible for the development and implementation of policies and procedures concerning the selection, evaluation, training and supervision of individuals employed as police officers.  This includes when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm. This also involves the proper procedure for the conducting of traffic stops and to ensure that racial profiling is not used in this process.

13.     Defendants Kosko, Miller, and Derbish, are officers of the  City of Pittsburgh Bureau of Police assigned to the patrol of the Zone 5 area of the City of Pittsburgh. In such capacity, Defendants Kosko, Miller, and Derbish are charged with the enforcement of the laws of the Commonwealth of  Pennsylvania, in a fair, just and equitable manner consistent with the rights afforded all individuals by the Constitutions of the United States of America and the Commonwealth of Pennsylvania; and, were acting, at all times relevant hereto, under color of law and color of their authority as  police officers of  the City of Pittsburgh.

14.     The City of Pittsburgh Police Department   should have had established or enforced established policies, procedures and/or guidelines concerning the nature of the  conduct and interaction of any  Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when individuals are to be taken into custody and or arrested; when traffic stops are to be effectuated; how traffic stops should be conducted, and, when; under what circumstances; and in what manner on officer is permitted to use force against an individual including the use of a firearm. Additionally, policies, procedure and/or guidelines exist or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an

appropriate and lawful manner. Also, to ensure that racial profiling is not used as a basis for police exercising of authority.

15.     On or about November 11, 2012, Officers Kosko and Miller were on patrol in or around the area on Larimer Avenue when Officer Miller allegedly first observed a silver Infinity driving at an alleged high rate of speed. There is, however, no confirmation that the speed was actually determined to be a clocking of the automobile via VASCAR, or any other electronic or mechanical device to determine the actual speed of the vehicle.

16.     Officers Kosko activated his lights and siren and conducted a traffic stop at or near the corner of Stanton and Farragut Streets, in the Highland Park area of the City of Pittsburgh.

17.     Both officers, in full uniform, approached the vehicle and asked the driver, later identified as the Plaintiff, Leon D. Ford, for his license and registration. When Plaintiff, Leon D. Ford, asked why he was being stopped, Officer Kosko informed him he was being stopped for driving too fast. The Plaintiff gave Officer Kosko a pink slip, Pennsylvania issued Driver's License, and a State Farm Insurance policy card. Officer Kosko returned to his patrol unit to verify the information.

18.     As Officer Kosko was verifying the information, Officer Miller remained at the Plaintiff's vehicle. It should be noted that rather than searching the Plaintiff's name, Leon D. Ford, Officer Kosko has stated that he instead searched the name "L. Ford."

19.     It has been purported by Officers Miller and Kosko that they shared the mistaken belief that the Plaintiff Leon D. Ford was not who he purported to be. This belief was founded upon nothing more than mere conjecture considering that the Plaintiff and the other individual share no similarities other ran their collective race.

20.     Because of this mistaken belief, Officer David Derbish was summoned to the scene in an attempt to confirm the identity of the Plaintiff, despite the fact that had the Plaintiff's correct information been run, his identity would have easily been confirmed. Had the Officers run the Plaintiff's correct information via his name, date of birth, operator's number, the search would have yielded identical information as that previously provided by the Plaintiff.

21.     During this identity investigation, lasting approximately twenty (20) minutes, the Plaintiff was still positioned in his vehicle.  He made no furtive movements, engaged in no suspicious behavior, and did not attempt to leave the scene in any way, despite the officers conducting an excessively and unreasonably long traffic stop.

22.     Upon Officer Derbish's arrival, he was unable to provide any additional information whatsoever about the identity or the driver or that the driver was not who he purported to be.

23.     Officer Derbish positioned himself on the front passenger side of the vehicle while Officer Miller re-approached the vehicle on the driver side to continue to monitor the actions of the Plaintiff. At this point in time, the time that had elapsed was nearing twenty minutes. At some point in time, Officer Derbish claimed that he thought that he could see a bulge in the Plaintiff's sweat pants, which he believed to be the barrel of a gun. Derbish alerted Miller of his observations. This belief was in direct contrast to the fact that the other two officers, Miller and Kosko, who had constant interaction and observation with the Plaintiff for approximately twenty-minutes and never once alleged to have seen contraband or any other indication of the possession of a weapon by the Plaintiff or in the interior of the vehicle.

24.     What happened next is unclear, however, what is known is Officer Miller and Kosko, who were both positioned on the driver's side of the vehicle, opened the driver's side

door and attempted to forcibly yank the Plaintiff out of the vehicle. At the same time, Officer Derbish opened the passenger's side door and entered the vehicle and began to punch the Plaintiff while he was being yanked out of the vehicle.

25.     Shortly thereafter, the Plaintiff's vehicle lurched forward from the curb, the cause of which is unknown, while Officer Derbish was in the vehicle, the momentum of which closed the door completely with Officer Derbish fully inside the vehicle.

26.     Seconds later, at point blank range, Officer Derbish shot the Plaintiff, Leon D. Ford, multiple times in his chest.

27.      At the time Officers Kosko and Miller attempted to forcibly pull the Plaintiff from his vehicle, Leon D. Ford did not pose an immediate threat to the safety of the officers or others.

28.     At the time Officer Derbish shot the Plaintiff in the chest four times with his firearm, Leon D. Ford did not pose an immediate threat to the safety of the officers or others.

29.     After the Plaintiff was shot, Officers Derbish, Kosko, and Miller pulled his lifeless body from the vehicle. The Plaintiff laid, unconscious, in a pool of his own blood as the Officers searched him for weapons or contraband.  No weapon, contraband, or indicia of the same was ever found on the Plaintiff's person or in the Plaintiff's vehicle.

30.     When he was shot, Leon D. Ford experienced both paralysis and intense pain throughout his body; and, the vehicle he was operating careened into a retaining wall. Due to the gunshot wounds, the Plaintiffs was in hypotensive shock when he presented at the Emergency Room in critical condition. The Plaintiff suffered a pneumopericardium, left lateral thigh subcutaneous tissue injury and left anterior chest wall/pectoralis major soft tissue defect. Additionally, the Plaintiff suffered severe and extensive spinal injuries including T6 vertebral

body bullet fragment with a small retropulsed bony fragment causing moderate central canal compromise, T5 vertebral body shattered, T4 with anterior column fracture with no retropulsion. The Plaintiff lost all feeling from the waist down, and as a result of his spinal cord injuries, he is confined to a wheel chair with permanent paralysis to his lower extremities.

31.     As a result of being shot, Leon D. Ford was required to be hospitalized, required surgical intervention; suffered extensive spinal cord and trunk injuries; and, has been required to undergo and will have to undergo extensive surgical procedures and long term care in the future.

32.     As a direct and proximate result of the actions of the Defendants, Leon D. Ford suffered a pneumopericardium, left lateral thigh subcutaneous tissue injury and  left anterior chest wall/pectoralis major soft tissue defect. Additionally, the Plaintiff suffered severe and extensive spinal injuries including T6 vertebral body bullet fragment with a small retropulsed bony fragment causing moderate central canal compromise, T5 vertebral body shattered, T4 with anterior column fracture with no retropulsion. The Plaintiff  lost all feeling from the waist down and as a result of his spinal cord injuries, he is confined to a wheel chair with permanent paralysis to his lower extremities. He has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, nursing, drugs, appliances and kindred expenditures.

33.    The presence of non-minor physical injuries like those suffered by Leon D. Ford, however, is certainly relevant in evaluating the degree of the Fourth Amendment intrusion, which has occurred

34.    Hand guns fall into the category of lethal, deadly force. All force--lethal and non-lethal--must be justified by the need for the specific level of force employed. The nature of the specific force employed must be evaluated in a specific factual situation where the force is employed.

35.    To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable.

36.    A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. Rather, the objective facts must indicate that the suspect poses an immediate threat to the officer or a member of the public.

37.    While the commission of a misdemeanor or summary/traffic  offense is not to be taken lightly, it mitigates against finding the force used to effect an arrest reasonable where the suspect was nonviolent and posed no or an insubstantial threat to the safety of the officers or others.

38.     Based upon the totality of the circumstances, the use of excessive force by Officers Miller and Kosko when they were yanking the Plaintiff, Leon D. Ford, out of his vehicle, was not appropriate or reasonable in nature and constituted an excessive use of force against him in violation of the rights and immunities guaranteed to Leon D. Ford by the Fourteenth and Fourth Amendments of the United States Constitution.

39.     Based upon the totality of the circumstances, the use of deadly, lethal force by Officer Derbish's in shooting the Plaintiff, Leon D. Ford, four (4) times was not appropriate or reasonable in nature and constituted an excessive use of force against him in violation of the rights and immunities guaranteed to Leon D. Ford by the Fourteenth and Fourth Amendments of the United States Constitution.

40.     The City of Pittsburgh Bureau of Police failed to have established  and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any  Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when individuals are to be taken into custody and or arrested; when and the method by which traffic stops are to be effectuated and conducted, and, when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm and other means of force. Additionally, it failed to enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

41.     The City of Pittsburgh failed to have established  and/or enforced established policies, procedures and/or guidelines concerning the nature of the conduct and interaction any Police Officer has with any individual in the discharge of their duties; and, in particular, in the manner in which incidents are investigated;  when individuals are to be taken into custody and or arrested; when and the method by which traffic stops are to be effectuated and conducted, and, when; under what circumstances; and in what manner an officer is permitted to use force against an individual including the use of a firearm and other means of force. Additionally, it failed to

enforce policies, procedure and/or guidelines which existed or should have existed concerning the review and supervision of the actions of individual officers to insure that they were conforming to established Police Department policies, procedures and/or guidelines and were discharging their duties in an appropriate and lawful manner.

42.     The errors, omissions and failures of the City of Pittsburgh Bureau of Police were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

43.     The errors, omissions and failures of the City of Pittsburgh were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

44.     The errors, omissions and failures of the Regina McDonald were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

45.     The errors, omissions and failures of the Nate Harper were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

46.     The errors, omissions and failures of David Derbish were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth

Amendments of the United States Constitution to have occurred.

47.     The errors, omissions and failures of the City of Pittsburgh Bureau of Police were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

48.     The errors, omissions and failures of the Andrew Miller were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

49.     The errors, omissions and failures of the Michael Kosko were the direct or proximate cause that allowed the inappropriate or unreasonable use of excessive force against Leon D. Ford in violation of the rights and immunities guaranteed to him by the Fourteenth and Fourth Amendments of the United States Constitution to have occurred.

50.     At all times relevant hereto, the named Defendants and, were acting under color of state law.

51.     At all times relevant whereto, the Defendants were acting directly or through their agents, servants and employees.

FIRST CAUSE OF ACTION

VIOLATION OF LEON D. FORD -FOURTH AMENDMENT RIGHTS

(ALL DEFENDANTS)

52.     Leon D. Ford alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-51 of the within Complaint as if more fully set forth herein.

53.     Defendants' actions errors and omissions, as more fully described in the factual

section of the within complaint, constituted violations of Leon D. Ford's rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Said rights, privileges and immunities include the right to body integrity; the right to be free from the use of excessive force; the right to be free from unreasonable seizures and searches.

54.     The acts of the Defendants were done with the purpose and intent of depriving Leon D. Ford of his rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

55.     The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Leon D. Ford  by the  Fourth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Leon D. Ford asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

      a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

      b.     punitive damages;

      c.     prejudgment and post judgment interest;

      d.     the costs incurred in the prosecution of this matter;

      e.     reasonable counsel fees; and,

      f.     such other and further relief as the Court deems just and appropriate.

SECOND CAUSE OF ACTION

VIOLATION OF LEON D. FORD -FOURTEENTH AMENDMENT RIGHTS

(ALL DEFENDANTS)

56.     Leon D. Ford alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-55 of the within Complaint as if more fully set forth herein.

57.     Defendants' actions errors and omissions, as more fully described in the factual section of the within complaint, constituted violations of Leon D. Ford's rights, privileges and immunities, as secured by the Fourteenth Amendment to the United States Constitution. Said rights, privileges and immunities include the right to due process and equal protection of the law which encompasses his right to body integrity; the right to be free from the use of excessive force; the right to be free from unreasonable seizures and searches.

58.     The acts of the Defendants were done with the purpose and intent of depriving Leon D. Ford  of his rights secured to him by the Fourteenth Amendment to the United States Constitution.

59.     The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Leon D. Ford  by the  Fourteenth Amendment to the United States Constitution.

WHEREFORE, Leon D. Ford asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

    a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

    b.     punitive damages;

c.      prejudgment and post judgment interest;

d.      the costs incurred in the prosecution of this matter;

e.      reasonable counsel fees; and,

f.      such other and further relief as the Court deems just and

appropriate.


THIRD CAUSE OF ACTION

FAILURE TO TRAIN, ENACT AND IMPLEMENT POLICIES AND PROCEDURES AND
TO SUPERVISE AND DISCIPLINE

LEON D. FORD

v.

CITY OF PITTSBURGH, CITY OF PITTSBURGH BUREAU OF POLICE, REGINA
MCDONALD, and NATE HARPER

60.     Leon D. Ford alleges and incorporates by reference thereto the averments set forth

in Paragraphs Nos. 1-59 of the within Complaint as if more fully set forth herein.

61.     The Defendants failed to adequately train, supervise and/or discipline its

employees or agents in the performance of their duties and/or undertook actions which

were improper or illegal and demonstrated indifference to the constitutional rights of

individuals, such as Leon D. Ford.

62.     The Defendants had policies and/or customs in place and/or failed to insure that

policies, procedures and protocols which existed were properly enforced and personnel

supervised in the performance of their duties that enabled their employees, servants or agents to

act with deliberate indifference to the constitutional rights of individuals, such as Leon D. Ford.

63.     The Defendants failed to develop and implement policies procedures and

protocols that then enabled their employees and agents to act with deliberate indifference to the constitutional rights of individuals, such as Leon D. Ford.

64.     Defendants' actions errors and omissions, as more fully described in the factual section of the within complaint, constituted violations of Leon D. Ford's right, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Said rights, privileges and immunities include the right to body integrity; the right to be free from the use of excessive force; the right to be free from unreasonable seizures and searches.

65.     The acts of the Defendants were done with the purpose and intent of depriving Leon D. Ford of his rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

66.     The acts of the Defendants were systematic and continuous in nature in that following the incident, all Officers, including the shooter, David Derbish, were returned to regular full-time duty in the same Zone as where the incident occurred. This decision was made by the named Defendants without first undertaking a full investigation of the incident which would of course include questioning the Plaintiff or  questioning the Plaintiff's counsel.

67.     The return to work of all Officers involved in this heinous example of racial profiling is especially troubling considering that members of Plaintiff's family reside in Zone 5. In fact, in response to a call, David Derbish was at the home of the Plaintiff's grandmother in the time following the shooting. Clearly, the decision to return the Officers involved in the incident was one made hastily, without undertaking a full investigation, and not clearly taking into consideration the rights, liberties and other considerations of the Plaintiff.

68.     The family of the Plaintiff was not permitted to visit their son as he lay in the

hospital in critical care. In fact, a Court Order issued by the Court of Common Pleas of Allegheny County was required to secure access by the parent of the Plaintiff to visit him in the intensive care unit, at which time, his life hung in the balance. This decision was made by the named Defendants in an effort to deprive the Plaintiff and his family rights guaranteed and secured to them by the Fourth and Fourteenth Amendments of the United States Constitution.

69.     Plaintiff further alleges, upon information and belief, that:

a.     The Defendants failed to train, supervise and discipline its police officers;

b.     Any program offered by the Defendants to train, supervise and disciple its officers was inadequate to enable and insure that the officers carried out their duties in an appropriate fashion, operating in a lawful manner and, to insure that Constitutional Rights were properly observed and protected;

c.     The Defendants were aware of the obvious need for improvement and the inadequacy of their programs and procedures and that the same would result in a violation of an individual's, such as the Plaintiff herein, Constitutional Rights;

d.     The Defendants knew or should have known that the failure to properly train, supervise and discipline its police officers was likely to result in the violation of Constitutional Rights;

e.     The Defendant policymakers were deliberately indifferent to the need for such training, supervision and discipline to protect the rights of the Plaintiff and other citizens; and,

f.     The failure of the Defendants to provide and insure the proper training, supervision and discipline has caused the Plaintiff and others to suffer violations of their Constitutional Rights and created an environment which encourages and allows officers to take the law into their own hands.

70.     The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to Leon D. Ford by the Fourth and Fourteenth Amendments to the United States Constitution.

71.     As a direct and proximate result of the Defendant's actions, Leon D. Ford suffered a pneumopericardium, left lateral thigh subcutaneous tissue injury and left anterior chest wall/pectoralis major soft tissue defect. Additionally, the Plaintiff suffered severe and extensive spinal injuries including T6 vertebral body bullet fragment with a small retropulsed bony fragment causing moderate central canal compromise, T5 vertebral body shattered, T4 with anterior column fracture with no retropulsion. The Plaintiff lost feeling from the waist down and as a result of his spinal cord injuries, he is confined to a wheel chair with permanent paralysis to his lower extremities. He has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, nursing, drugs, appliances and kindred expenditures.

WHEREFORE, Leon D. Ford asks for the entrance of judgment against the Defendants, individually and jointly, as follows:

a.      compensatory damages in an amount to be determined by this Court to be

just, fair and reasonable;

b.       punitive damages;

c.       prejudgment and post judgment interest;

d.       the costs incurred in the prosecution of this matter;

e.       reasonable counsel fees; and,

f.       such other and further relief as the Court deems just and

appropriate.

FOURTH CAUSE OF ACTION-ASSAULT & BATTERY

LEON D. FORD V. D. DERBISH

72.     Plaintiff alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-71 of the within Complaint as if more fully set forth herein.

73.     The Defendant shot Leon D. Ford without justice or reasonable cause for the same constituting an unlawful assault and battery upon the person Leon D. Ford.

74.     After he was shot, the Plaintiff, who was bleeding profusely, was pulled from the vehicle and laid facedown upon the concrete.  He was then handcuffed without Officer Derbish first rendering the Plaintiff aid or assistance to his gunshot wounds.

75.     As a direct and proximate result of the Defendant's actions, Leon D. Ford suffered a pneumopericardium, left lateral thigh subcutaneous tissue injury and  left anterior chest wall/pectoralis major soft tissue defect. Additionally, the Plaintiff suffered severe and extensive spinal injuries including T6 vertebral body bullet fragment with a small retropulsed bony fragment causing moderate central canal compromise, T5 vertebral body shattered, T4 with anterior column fracture with no retropulsion. The Plaintiff lost feeling from the waist down and as a result of his spinal cord injuries, he is confined to a wheel chair with permanent paralysis to

his lower extremities. He has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, nursing, drugs, appliances and kindred expenditures.

WHEREFORE,  Leon D. Ford asks for the entrance of judgment against the Defendant as follows:

    a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

    b.    punitive damages;

    c.    prejudgment and post judgment interest;

    d.    the costs incurred in the prosecution of this matter;

    e.    reasonable counsel fees; and,

    f.    such other and further relief as the Court deems just and appropriate.

FIFTH CAUSE OF ACTION-ASSAULT & BATTERY

LEON D. FORD v. M. KOSKO

76.    Plaintiff alleges and incorporates by reference thereto the averments set forth in

Paragraphs Nos. 1-75 of the within Complaint as if more fully set forth herein.

77.     The Defendant attempted to drag Leon D. Ford from his vehicle without justice or reasonable cause for the same constituting an unlawful assault and battery upon the person of Leon D. Ford.

78.     After he was shot, the Plaintiff was pulled from the vehicle and laid face down upon the concrete, bleeding profusely.  He was then handcuffed without Officer Kosko rendering aid or assistance to the Plaintiff's gunshot wounds.

79.     As a direct and proximate result of the Defendant's actions, Leon D. Ford suffered a pneumopericardium, left lateral thigh subcutaneous tissue injury and  left anterior chest wall/pectoralis major soft tissue defect. Additionally, the Plaintiff suffered severe and extensive spinal injuries including T6 vertebral body bullet fragment with a small retropulsed bony fragment causing moderate central canal compromise, T5 vertebral body shattered, T4 with anterior column fracture with no retropulsion. The Plaintiff lost feeling from the waist down and as a result of his spinal cord injuries, he is confined to a wheel chair with permanent paralysis to his lower extremities. He has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, nursing, drugs, appliances and kindred expenditures.

WHEREFORE, Leon D. Ford asks for the entrance of judgment against the Defendant as follows:

      a.      compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

      b.      punitive damages;

      c.      prejudgment and post judgment interest;

      d.      the costs incurred in the prosecution of this matter;

      e.      reasonable counsel fees; and,

      f.      such other and further relief as the Court deems just and appropriate.

## SIXTH CAUSE OF ACTION-ASSAULT & BATTERY

## LEON D. FORD v. A. MILLER

80.     Plaintiff alleges and incorporates by reference thereto the averments set forth in Paragraphs Nos. 1-79 of the within Complaint as if more fully set forth herein.

81.     The Defendant attempted to drag Leon D. Ford from his vehicle without justice or reasonable cause for the same constituting an unlawful assault and battery upon the person of Leon D. Ford.

82.     After the Plaintiff was shot, he was pulled from the vehicle, bleeding profusely, and laid facedown upon the pavement.  He was then handcuffed without Officer Miller first rendering the Plaintiff aid or assistance to his gunshot wounds.

83.     As a direct and proximate result of the Defendant's actions, Leon D. Ford suffered a pneumopericardium, left lateral thigh subcutaneous tissue injury and  left anterior

chest wall/pectoralis major soft tissue defect. Additionally, the Plaintiff suffered severe and extensive spinal injuries including T6 vertebral body bullet fragment with a small retropulsed bony fragment causing moderate central canal compromise, T5 vertebral body shattered, T4 with anterior column fracture with no retropulsion. The Plaintiff lost feeling from the waist down and as a result of his spinal cord injuries, he is confined to a wheel chair with permanent paralysis to his lower extremities. He has been subjected to and may hereafter be subject to great pain, suffering and inconvenience; he was required to undergo and in the future may be required to undergo painful diagnostic tests, treatment and extensive therapy for his injuries; he may have sustained an aggravation of pre-existing injuries or conditions; he has sustained emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression and nervousness. He has suffered scarring and disfigurement. He has incurred and may hereafter incur expenditures for medical care, nursing, drugs, appliances and kindred expenditures.

WHEREFORE, Leon D. Ford asks for the entrance of judgment against the Defendant as follows:

    a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

    b.     punitive damages;

    c.     prejudgment and post judgment interest;

    d.     the costs incurred in the prosecution of this matter;

    e.     reasonable counsel fees; and,

      f.     such other and further relief as the Court deems just and appropriate.

Respectfully submitted by:

/s/ *Monte J. Rabner*
Monte J. Rabner, Esquire
PA. ID No. 68251

Rabner Law Offices, P.C.
800 Law & Finance Building
429 Fourth Avenue
Pittsburgh, Pa 15219

(412) 765-2500/(412) 765-3900 Fax.

Email: monte@rabnerlaw.com

JURY TRIAL DEMANDED AS TO ALL CLAIMS