IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON D. FORD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1364 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| CITY OF PITTSBURGH; CITY OF | ) | |
| PITTSBURGH BUREAU OF POLICE; | ) | |
| REGINA McDONALD; NATE HARPER; | ) | |
| POLICE OFFICER DAVID DERBISH; | ) | Re: ECF No. 35 |
| POLICE OFFICER MICHAEL KOSKO | ) | |
| *and* POLICE OFFICER ANDREW | ) | |
| MILLER, | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

Pending before the Court is a "Joint Motion to Dismiss" (ECF No. 35),[1] filed on behalf of all Defendants, who are alleged to have had a role in shooting and paralyzing the Plaintiff, Leon D. Ford ("Plaintiff" or "Ford"), in the course of a routine traffic stop. For the reasons set forth in this Memorandum Order, the Joint Motion to Dismiss is granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In the Amended Complaint (ECF No. 34), Plaintiff sets forth civil rights claims against City of Pittsburgh Police Officers David Derbish ("Derbish"), Michael Kosko ("Kosko") and Andrew Miller ("Miller") for injuries sustained by him in the course of a traffic stop on the evening of November 11, 2012. The claims against these Defendants include unreasonable search and seizure, false arrest, false imprisonment, the use of excessive force in violation of the

---

[1] To lessen confusion, in the future, counsel for Defendants shall refrain from captioning any document or motion as "joint" unless the document or motion is filed on behalf of <u>all parties</u>.

1

Fourth and Fourteenth Amendments of the United States Constitution, and state law claims for assault and battery.

Plaintiff also alleges claims against the City of Pittsburgh, the City of Pittsburgh Bureau of Police, Assistant Chief of Police McDonald and former Chief of Police Harper, named as defendants solely in their official capacities. Plaintiff alleges that these defendants participated in an ongoing deliberate failure to train, supervise and discipline City of Pittsburgh Police Officers. In addition, Plaintiff alleges these supervisory defendants wrongfully implemented customs and policies authorizing the use of racial profiling to effectuate arrests and traffic stops. Plaintiff alleges that the supervisory defendants failed to prevent and/or adopted customs or practices resulting in the frequent use of excessive force in the course of police interaction with African American males, who have been stopped on the erroneous suspicion that they are involved in criminal activity. Plaintiff further alleges that the supervisory defendants acted with deliberate indifference to City of Pittsburgh police officers' violation of the constitutional rights of the citizens of the City of Pittsburgh generally, and the rights of Plaintiff in particular.

With regard to the events at issue, Plaintiff alleges well-pleaded facts in the Amended Complaint. Specifically, on November 11, 2012, Officers Kosko and Miller were on patrol near Larimer Avenue in the City of Pittsburgh, when Officer Miller allegedly saw Plaintiff's vehicle driving at a high rate of speed. Officer Kosko activated the lights and siren of the patrol vehicle and initiated a traffic stop. When approached by the officers, Plaintiff gave Officer Kosko his Pennsylvania driver's license, proof of ownership of the vehicle and proof of insurance. The officers did not believe that Plaintiff was who he identified himself to be, and held him at the scene while they called Officer David Derbish to confirm his identity. After approximately 20 minutes, Officer Derbish arrived and was unable to provide any additional information regarding

2

Plaintiff's identity. Thereafter, Officer Derbish claimed that he saw a bulge in Plaintiff's sweat pants and believed it to be the barrel of a handgun. Officer Miller and Kosko opened Plaintiff's driver side door and attempted to yank him out of the vehicle, while Officer Derbish opened the passenger side door to push Plaintiff out. Shortly thereafter, the car suddenly lurched forward, with Plaintiff and Officer Derbish in the car. Seconds later, Officer Derbish shot the Plaintiff multiple times in the chest. As a result of the shooting, Plaintiff suffered paralysis and other critical injuries. Plaintiff alleges that the actions of Defendants Derbish, Miller and Kosko constitute the unconstitutional use of excessive force, as well as false arrest, false imprisonment, and assault and battery.

## II.    STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all of the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). A plaintiff's

3

factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5C Wright & Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. at 234, quoting Twombly, 550 U.S. at 556 n. 3.

The United States Court of Appeals for the Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### III. DISCUSSION

#### A. Unreasonable Search and Seizure, Excessive Use of Force and Assault and Battery

Defendants seek the dismissal of Plaintiff's claims arising out of the alleged unreasonable search and seizure of Plaintiff, the excessive use of force in effectuating his detention, and

4

assault and battery. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Estate of Smith, 318 F.3d 497, 515 (3d Cir. 2003)(quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir.1999)). The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Graham v. Connor, 490 U.S. 386, 397 (1989). Thus, if a use of force is objectively reasonable, an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial. See Estate of Smith, 318 F.3d at 515; Abraham, 183 F.3d at 289.

> Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. See Graham, 490 U.S. at 396, 109 S.Ct. at 1872. A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. See Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997). As the Supreme Court has stated, [t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004)(quoting Graham, 490 U.S. at 396–97). "There can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985). Accordingly, the issue is whether the actions of the Defendants, in shooting Plaintiff, in the course of a traffic stop, were reasonable.

5

Because such a determination depends on "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force," the United States Court of Appeals for the Third Circuit has held that "[t]he reasonableness of the use of force is normally an issue for the jury." Rivas v. City of Passaic, 365 F.3d 181,198 (3d Cir. 2004) (citing Abraham v. Raso, 183 F.3d 279, 290–91 (3d Cir. 1999)).  In cases removing any issue of fact after the completion of discovery, summary judgment may be appropriate.  See, e.g., Plumhoff v. Rickard, No. 12-1117, 134 S. Ct. 2012, 2022 (2014) (in light of the circumstances presented, it is beyond serious dispute that Plaintiff's flight posed a grave public safety risk, and district court erred by failing to find that the police acted reasonably in using deadly force to end that risk).

Here, before any discovery has been completed, it is surely premature to expect the Court to make such a resolution at the motion to dismiss stage, when the only issue before it is to determine whether Plaintiff's Complaint alleges facts that "plausibly give rise to an entitlement for relief." Connelly v. Steel Valley Sch. Dist., 706 F.3d 201, 212 (3d Cir. 2013).   In this case, Plaintiff's Complaint clearly meets this standard.  Accordingly, Defendants' Motion to Dismiss on this basis is DENIED.

**B. Qualified Immunity**

The Police Officer Defendants assert that they are entitled to qualified immunity as to Plaintiff's claims arising out of his detention and the alleged excessive use of force to effectuate his arrest, contending that they acted reasonably in response to the circumstances surrounding the incident.  Government officials performing discretionary functions are entitled to immunity where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. Kopec v. Tate,

361 F.3d 772, 776 (3d Cir. 2004). To determine whether qualified immunity applies, the Court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right" and also "ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct. And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.' Ibid." Plumhoff v. Rickard, ___ U.S. ___, 134 S. Ct. 2012, 2023 (2014) (quoting, Ashcroft v. al–Kidd, 563 U.S. ___, ___, 131 S. Ct. 2074, 2080, 2083–2084 (2011)).

Defendants make a cursory and broad sweeping claim to their entitlement to qualified immunity, contending that the allegations are insufficient to establish that any Defendant knowingly violated a clearly established constitutional right. However, the United States Court of Appeals for the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x. 788, 791 n. 3 (3d Cir. 2009). Likewise, unless a complaint discloses that a police officer did not violate clearly established law when firing at a suspect, dismissal on qualified immunity grounds is premature. See, e.g., Debrew v. Auman, 354 F. App'x. 639, 642 (3d Cir. 2009) (citing Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006)). At this time, it appears that the present case is one of the "vast majority of cases" in which a determination of qualified immunity is inappropriate at the

7

pleading stage. Defendants' Motion to Dismiss on the basis of qualified immunity for the conduct at issue is DENIED.

### C. Supervisory Liability – Regina McDonald, Nate Harper and the City of Pittsburgh Bureau of Police

Plaintiff alleges claims against the City of Pittsburgh Bureau of Police, former Chief of Police Nate Harper and Assistant Chief of Police Regina McDonald. Plaintiff's claims against Defendants Harper and McDonald are brought their official capacities only, as the former Chief of Police and Assistant Chief of Police, respectively. See, ECF No. 34, ¶¶ 4, 5, 49 – 50; and see, Plaintiff's Brief in Opposition to Defendants' Joint Motion to Dismiss, ECF No. 39, p. 17 ("Because Plaintiff has demonstrated liability of former police chief Nate Harper and acting police chief Regina McDonald *in their official capacity*, a motion to dismiss is improper.")(italics added).

#### 1. Official Capacity Claims – Harper and McDonald

Defendants argue that Plaintiff fails to state a claim against Defendants Harper and McDonald in their official capacities. Official capacity claims against state and local officials are, essentially, another way of proceeding against a municipality. As summarized by a colleague of this Court:

> Official-capacity suits ... "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, *infra*, 436 U.S. at 690, n. 55. On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, e.g., [Kentucky v. Graham, 473 U.S. 159, 166 (1985)]. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, id. (quotations omitted); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. Monell, *infra*; Oklahoma City v. Tuttle, 471 U.S. 808, 817–818,... "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those

8

> whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, *infra*, at 694.

Cahill ex rel. Cahill v. Live Nation, 866 F. Supp.2d 503, 520-521 (W.D. Pa. 2011) (parallel and additional citations omitted). Therefore, "[a]s long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citing Brandon, 469 U.S. at 471–72). Because Defendants Harper and McDonald are sued solely in their official capacities as the Chief of Police and Assistant Chief of Police during the time period at issue, and the City of Pittsburgh is already named as a Defendant, Plaintiff's claims against them are duplicative. Accordingly, Defendant's Motion to Dismiss Plaintiff's official capacity claims against Defendants Harper and McDonald is GRANTED.

### 2. Claims against the City of Pittsburgh Bureau of Police

As indicated by Defendants, the City of Pittsburgh Bureau of Police is an improper party to this action. The United States Court of Appeals for the Third Circuit has held that a municipal police department is not a separate entity from the municipality such that it can be sued for purposes of Section 1983 liability. Briggs v. Moore, 251 F. App'x 77, 79 (3d Cir. 2007). See, also, Johnson v. City of Erie, 834 F. Supp. 873, 878–79 (W.D. Pa.1993) (holding that the police department was both "improper" and "unnecessary" when the municipality itself has been sued); Schor v. N. Braddock Borough, No. 02:11–cv–397, 2011 WL 2745999, at *4 (W.D. Pa. July 12, 2011) (citing Johnson, 834 F. Supp. at 878–79) ("It is well settled that a municipal police department is not a proper party in a suit in which the municipality itself is a party."); Martin v. Red Lion Police Dept., 146 F. App'x 558, 562 n. 3 (3d Cir. 2005) (citing Johnson, 834 F. Supp. at 878–79) ("Red Lion Police Department, as the subdivision of defendant Red Lion Borough

9

through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983."). Because the City of Pittsburgh has been named as a Defendant in this action, the Motion to Dismiss the City of Pittsburgh Bureau of Police, a sub-unit of the City of Pittsburgh, is GRANTED.

### C. Monell Liability – City of Pittsburgh

To state a valid claim under Section 1983, a plaintiff must meet two threshold requirements. First, the plaintiff must allege that the misconduct was committed by a person acting under the color of state law. Second, the plaintiff must allege that, as a result of the misconduct, he was deprived of specific rights, privileges, or immunities secured by the Constitution or laws of the United States. Collins v. City of Harker Heights, 503 U.S. 115, 120, (1992); Albright v. Oliver, 510 U.S. 266, 271 (1994).

A municipality cannot be held liable for its employees' bad acts on the basis of respondeat superior. Monell v. Dept. of Social Services, 436 U.S. 658, 694-95 (1978); Panas v. City of Philadelphia, 871 F. Supp.2d 370, 377-78 (E.D. Pa. May 14, 2012). Rather, the "government itself, through its policies or practices, must be sufficiently culpable before" a court imposes Section 1983 liability. Id. However, merely alleging the existence of a policy, practice, or custom is not enough. The plaintiff in a Section 1983 action must show an "affirmative link" between the occurrence of police misconduct and the municipality's policy, custom, or practice. Rizzo v. Goode, 423 U.S. 362, 371 (1976). Thus, consistent with Monell, in order to impose liability on a local governmental entity for failing to act to preserve constitutional rights, a Section 1983 plaintiff must establish not only that he was deprived of a constitutional right, but that: (1) the municipality had a policy; (2) the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (3) the policy is the "moving force behind the constitutional

violation." City of Canton, Ohio v. Harris, 489 U.S. 378, 389–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Courts have held municipalities liable for their policies, practices, or customs in two scenarios that appear relevant to the instant case. First, liability may attach where a municipality's course of conduct is considered to be a "custom" when, though not authorized by law, "practices of state officials [are] so permanent and well-settled as to virtually constitute law." Id. This may occur when "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [plaintiff's] injury." Beck, 89 F.3d at 971 (citing Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

Second, a municipality may be held liable for the constitutional violations of employee police officers when the municipality fails to adequately supervise or train its officers. City of Canton, Ohio, 489 U.S. at 388. In this case, where the basis for Section 1983 liability rests upon a municipality's alleged failure to adequately train or supervise its officers, the claim will only succeed if the failure to train or supervise amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. Id. at 388. "Deliberate indifference" exists where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390. Only then can "such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983." Id. at 389.

In addition to establishing a policy or custom of constitutional violations, or a lack of supervision or training amounting to deliberate indifference, Plaintiff also bears the "burden of

11

proving that the municipal practice was the proximate cause of the injuries suffered." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Id. at 850. Causation is normally a jury question. Panas, 871 F. Supp.2d at 378. "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." Bielevicz, 915 F.2d at 851.

At this initial stage of the proceeding, while broadly stated, Plaintiff's allegations of official policy or custom and failure to train or supervise, based upon an alleged pattern of similar constitutional violations, have been sufficiently pled to withstand Defendants' Rule 12(b)(6) challenge. Accordingly, Defendants' Motion to Dismiss the City of Pittsburgh is DENIED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [ECF No. 35] is GRANTED, in part, only as to the claims asserted against Defendants Nate Harper and Regina McDonald, in their official capacities, and the City of Pittsburgh Bureau of Police. The Motion to Dismiss is DENIED in all other respects.

**ORDER**

AND NOW, this 22nd day of December 2014, upon consideration of Defendants' Motion to Dismiss, ECF No. 35, and the briefs filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss is granted only as to Defendants Nate Harper and Regina McDonald, in their official

capacities, and the City of Pittsburgh Bureau of Police, and the Clerk shall terminate these parties from the docket of this action.

IT IS FURTHER ORDERED that the Motion to Dismiss is DENIED as to Plaintiff's claims alleging unreasonable search and seizure, the use of excessive force in violation of the Fourth Amendment, and assault and battery, asserted against Defendants Andrew Miller, Michael Kosko and David Derbish.

IT IS FURTHER ORDERED that the Motion to Dismiss is DENIED as to Defendants' assertion of qualified immunity as a complete defense to Plaintiff's action.

IT IS FURTHER ORDERED that the Motion to Dismiss is DENIED as to the claims asserted against the City of Pittsburgh.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY ORDER OF COURT:

/s/ Maureen P. Kelly
CHIEF U.S. MAGISTRATE JUDGE

Dated: December 22, 2014

cc:   All counsel of record by Notice of Electronic Filing